**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DARREN HEYWARD,

  Plaintiff,                                                    CASE NO.:

-VS-

DRIVETIME AUTOMOTIVE  GROUP, INC., (
DRIVETIME CAR SALES COMPANY, LLC
and BRIDGECREST CREDIT COMPANY,
LLC,

  Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C.

§227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et*

*seq*. ("FCCPA").

## INTRODUCTION

2.      The TCPA was enacted to prevent companies like DRIVETIME AUTOMOTIVE

GROUP, INC, d/b/a DRIVETIME CAR SALES COMPANY, LLC ("DriveTime"), and

BRIDGECREST CREDIT COMPANY, LLC ("Bridgecrest") (referred to collectively

hereinafter as "Defendants") from invading American citizens' privacy and prevent abusive

"robo-calls."

3.      "The TCPA is designed to protect individual consumers from receiving intrusive

and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*,  –US--, 132 S.Ct. 740, 745, 181

L.Ed.2d 881 (2012).

4. "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

6. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties

of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See

*Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*,

746 F.3d 1242, 1249 (11th Cir. 2014).

9.      The alleged violations described herein occurred in Hillsborough County, Florida.

Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the

judicial district in which a substantial part of the events or omissions giving rise to this action

occurred.

## FACTUAL ALLEGATIONS

10.     Plaintiff is a natural person, and citizen of the State of Florida, residing in Tampa,

Hillsborough County, Florida.

11.     Plaintiff is the "called party."  See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d

1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.     Plaintiff is a "consumer" as defined in Florida Statute §559.55(8).

13.     Defendant, DriveTime, is a corporation with its principal place of business

located at 1720 W Rio Salado Parkway, Tempe, AZ 85281, and which conducts business in the

State of Florida through its registered agent, Corporation Service Company, located at 1201

Hays Street, Tallahassee, FL 32301.

14.     Defendant, Bridgecrest, is a corporation with its principal place of business

located at 7300 E. Hampton Ave., Suite 101, Mesa, AZ 85209, and which conducts business in

the State of Florida through its registered agent, Corporation Service Company, located at 1201

Hays Street, Tallahassee, FL 32301.

15.     Defendant, DriveTime, consented to and has knowledge and control of the

activities of their agents and representatives, supervisors, managers, affiliates, subsidiaries,

divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors, including but not limited to Bridgecrest.

16.    Upon information and belief, DriveTime, had knowledge of all actions (further described in the complaint) taken by its agents, Bridgecrest, and specifically instructed and/ or conspired with them to take such actions as were ultimately taken in regards to Plaintiff and Plaintiff's Property.

17.    At all times material: DriveTime acknowledged that Bridgecrest would act on behalf of DriveTime with respect to the conduct alleged herein; Bridgecrest accepted said undertaking; and DriveTime retained control over the actions of its authorized agents.

18.    Upon information and belief, the aforementioned principal/agent relationship by and between DriveTime, as principal, and Bridgecrest, as agent, was pursuant to an express agreement, implied agreement and/or gratuitous undertaking.

19.    Neither, DriveTime nor Bridgecrest disclosed to Plaintiff the principal/agent relationship by and between them, but is/was nonetheless eventually clear that Bridgecrest at all times material, acted as the agent on behalf of DriveTime with respect to their debt collection activities described herein.

20.    The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

21.    Defendant, DriveTime, is a "creditor" as defined in Florida Statute §559.55(5).

22.    Plaintiff is the regular user and carrier of the cellular telephone number at issue, (813) *** - 8740, and was the called party and recipient of Defendants' hereinafter described calls.

23.     Defendants placed an exorbitant number of automated calls to Plaintiff's cellular telephone (813) *** - 8740 in an attempt to collect on an automobile loan.

24.     On several occasions over the last four (4) years, Plaintiff's instructed Defendants' agents(s) to stop calling his cellular telephone.

25.     Upon receipt of the calls from Defendants, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (813) 227-4975, (480) 606-5066, and (877) 335-7155, and when those numbers are called, a pre-recorded message answers "Thank you for calling Bridgecrest. Para Español, oprima dos. All calls may be recorded for quality and training purposes…."

26.     Upon information and belief, some or all of the calls the Defendants made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received, and because when he answered a call from the Defendants, he would hear either a prerecorded message, or an extended pause before a representative would come on the line.

27.     Furthermore, some or all of the calls at issue were placed by the Defendants using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

28.     Defendants attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

29.     In or about September of 2015, Plaintiff answered a call from Bridgecrest to his aforementioned cellular telephone number, met with an automated message, held the line and was eventually connected to a live representative, and informed an agent/representative of Bridgecrest that there was a discrepancy with his payment schedule, that the calls to his cellular phone were harassing, and demanded that they cease calling his aforementioned cellular telephone number.

30.     During the aforementioned phone conversation in or about September of 2015 with Bridgecrest's agent/representative, Plaintiff unequivocally revoked any express consent Bridgecrest may have had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

31.     Each subsequent call Bridgecrest made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

32.     Each subsequent call Bridgecrest made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

33.     Additionally, in or about August of 2016, due to continued automated calls to his aforementioned cellular telephone number from Bridgecrest, Plaintiff again received a call from Bridgecrest, met with an automated message, was eventually connected to a live agent/representative of Bridgecrest, and informed the agent/representative of Bridgecrest that he had previously informed them not to call his cellular phone, and again demanded that Bridgecrest cease placing calls to his aforementioned cellular telephone number.

34.     Further, on or around February 9, 2017, due to the continued automated calls to his aforementioned cellular telephone number from the Bridgecrest, Plaintiff again received a

call from Bridgecrest, met with an automated message, was eventually connected to a live agent/representative of Bridgecrest, and informed the agent/representative of Bridgecrest that he had previously informed them not to call his cellular phone, and again demanded that Bridgecrest cease placing calls to his aforementioned cellular telephone number.

35.   Despite actual knowledge of their wrongdoing, the Defendants continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendants may have had to call his aforementioned cellular telephone number.

36.   On at least three (3) separate occasions, Plaintiff has either answered a call from Defendants or returned a call to Defendants regarding his account, held the line to be connected to a live representative, and demanded that Defendants cease placing calls to his aforementioned cellular telephone number. His principal reason for answering these calls and making these demands of Defendants was the cumulative injury and annoyance he suffered from the calls placed by Defendants.  These injuries are further described in paragraphs 40 through 47 herein.

37.   Each of the Plaintiff's requests for the harassment to end was ignored.

38.   Defendants have placed approximately five-hundred (500) actionable calls to Plaintiff's aforementioned cellular telephone number. (Please see attached **Exhibit "A"** representing a non-exclusive call log of forty (40) calls from August 1, 2016 through September 2, 2016).

39.   Defendants intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

40.     From each and every call placed without express consent by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

41.     From each and every call without express consent placed by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendants' calls.

42.     From each and every call placed without express consent by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications

43.     Each and every call placed without express consent by Defendants to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44.     Each and every call placed without express consent by Defendants to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

45.     Each and every call placed without express consent by Defendants to Plaintiff's cell phone where a voice message was left occupied space in Plaintiff's phone or network.

46.     Each and every call placed without express consent by Defendants to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

47.     As a cumulative result of Defendants' ceaseless barrage of unlawful calls to Plaintiff's aforementioned cellular telephone number, the Plaintiff suffered the injuries of annoyance, stress, intimidation, and emotional distress.

48.     Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

49.     Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendants, to remove the number.

50.     Defendants' corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendants they do not wish to be called.

51.     Defendants have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

52.     Defendants have numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

53.     Defendants have had numerous complaints against it from consumers across the country asking to not be called, however Defendants continue to call these individuals.

54. Defendants' corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendants' call list.

55. Defendants have a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

56. Not one of Defendants' telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

57. Defendants willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### DRIVETIME AUTOMOTIVE GROUP, INC.,
### d/b/a DRIVETIME CAR SALES COMPANY, LLC
### (Violation of the TCPA)

58. Plaintiff realleges and incorporates paragraphs one (1) through fifty-seven (57) above as if fully set forth herein.

59. DriveTime willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified DriveTime that Plaintiff did not wish to receive any telephone communication from DriveTime, and demanded for the calls to stop.

60. DriveTime repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, DARREN HEYWARD, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, DRIVETIME AUTOMOTIVE GROUP, INC. d/b/a DRIVETIME CAR SALES COMPANY, LLC, for statutory damages, treble

damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### DRIVETIME AUTOMOTIVE  GROUP, INC.,
### d/b/a DRIVETIME CAR SALES COMPANY, LLC
### (Violation of the FCCPA)

61.     Plaintiff realleges and incorporates paragraphs one (1) through fifty-six (56) above as if fully set forth herein.

62.     At all times relevant to this action DriveTime is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

63.     DriveTime has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

64.     DriveTime has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of his or his family.

65.     DriveTime's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff, DARREN HEYWARD, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, DRIVETIME AUTOMOTIVE GROUP, INC. d/b/a DRIVETIME CAR SALES COMPANY, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
### BRIDGECREST CREDIT COMPANY, LLC
**(Violation of the TCPA)**

66.     Plaintiff realleges and incorporates paragraphs one (1) through fifty-seven (57) above as if fully set forth herein.

67.     Bridgecrest willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Bridgecrest that Plaintiff did not wish to receive any telephone communication from Bridgecrest, and demanded for the calls to stop.

68.     Bridgecrest repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, DARREN HEYWARD, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, BRIDGECREST CREDIT COMPANY, LLC, for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT IV
### BRIDGECREST CREDIT COMPANY, LLC
**(Violation of the FCCPA)**

69.     Plaintiff realleges and incorporates paragraphs one (1) through fifty-six (56) above as if fully set forth herein.

70.     At all times relevant to this action Bridgecrest is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

71.     Bridgecrest has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

72.     Bridgecrest has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of his or his family.

73.     Bridgecrest's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff, DARREN HEYWARD, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, BRIDGECREST CREDIT COMPANY, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully Submitted,

*/s/Shaughn C. Hill*
SHAUGHN C. HILL, ESQUIRE
Florida Bar No. 105998
MORGAN & MORGAN, TAMPA, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone:  (813) 223-5505
Facsimile:   (813) 223-5402
Email: SHill@ForThePeople.com
Secondary: JSherwood@ForThePeople.com
*Attorney for Plaintiff*